UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC,<br><br>              Plaintiff,<br>v.<br><br>SENSUS, USA, INC. et al.,<br><br>              Defendants. | § § § § § § § § § § § | Civil Action No. 2:10-cv-00448-TJW<br><br>JURY TRIAL REQUESTED |

**EON'S RESPONSE TO JUNI'S MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION AND VENUE**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................ 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ............................................... 1

III.   STATEMENT OF FACTS ........................................................................................ 1

IV.    CONTROLLING LAW AND STANDARDS ......................................................... 5

V.     ARGUMENT ............................................................................................................... 8

     A.    Juni is Subject to Personal Jurisdiction. ........................................................ 8

     B.    Because Juni is Subject to Personal Jurisdiction, Venue is Proper. ......... 13

     C.    Alternatively, EON is Entitled to Jurisdictional Discovery. .................... 13

VI.    CONCLUSION .......................................................................................................... 14

# TABLE OF AUTHORITIES

**FEDERAL CASES** Page(s)

*Advanceme, Inc. v. Rapidpay LLC*,
  450 F. Supp. 2d 669 (E.D. Tex. 2006)..................................................................6, 10, 11

*Aten Int'l v. Emine Tech. Co.*,
  261 F.R.D. 112 (E.D. Tex. 2009)..................................................................9, 11, 12, 13

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009)..................................................................................13

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994).......................................................................................7

*Fielding v. Hubert Burda Media, Inc.*,
  415 F.3d 419 (5th Cir. 2005) ......................................................................................13

*GSK Techs. v. Schneider Elec., S.A.*,
  No. 6:06CV361, 2007 WL 788343 (E.D. Tex. Mar. 14, 2007)...........................9, 12

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)......................................................................................................8

*Marshall Packaging Co. v. Nestle Waters North Am.*,
  No. 6:05CV295, 2006 WL 871015 (E.D. Tex. Mar. 24, 2006)..................5, 6, 7, 12

*Nuance Comm'ns, Inc. v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010)............................................................................ passim

*Powerhouse Prods., Inc. v. Widgery*,
  564 F. Supp. 2d 672 (E.D. Tex 2008) ...................................................................6, 10

*QR Spex, Inc. v. Motorola, Inc.*,
  507 F. Supp. 2d 650 (E.D. Tex. 2007) .........................................................................7

*Silent Drive, Inc. v. Strong Indus., Inc.*,
  326 F.3d 1194 (Fed. Cir. 2003).....................................................................................5

*T-Netix v. Pinnacle Pub. Servs., LLC*,
  No. 2:09-CV-333-CE, 2010 WL 3859687 (E.D. Tex. Sept. 30, 2010) ...................13

*Viam Corp. v. Iowa Export-Import Trading Co.*,
  84 F.3d 424 (Fed. Cir. 1996).......................................................................................12

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)......................................................................................................5

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 2d 1119 (W.D. Pa. 1997) .................................................................................6, 10

**FEDERAL STATUTES**

28 U.S.C. § 1391(c) ...............................................................................................................7, 8, 13

28 U.S.C. § 1400(b) ....................................................................................................................7, 13

**I.   INTRODUCTION**

EON has established a prima facie case for this Court's exercise of personal jurisdiction over Juni America, Inc. ("Juni"). EON's claims for infringement of U.S. Patent No. 5,592,491 (the "'491 Patent") arise in part from Juni's accused products being sold for use in and being used in infringing networks sold to and used by residents of the Eastern District of Texas. Juni has purposefully placed these products in the stream of commerce with constructive or actual knowledge of their likely destination in this district. When taken as true, with all inferences drawn in EON's favor, EON's allegations demonstrate that Juni has the necessary minimum contacts with Texas to confer personal jurisdiction, and Juni cannot establish any sound basis to defeat this Court's constitutional exercise of jurisdiction. In addition, because Juni is subject to personal jurisdiction in the Eastern District of Texas, it follows that venue is also proper. Accordingly, EON requests Juni's motion be denied on both grounds.

**II.   NATURE AND STAGE OF THE PROCEEDINGS**

On October 22, 2010, EON filed its Original Complaint (Doc. No. 1) asserting claims against Juni and other defendants for infringement of the '491 Patent. EON amended its Complaint (Doc. No. 64) on January 11, 2011, naming additional defendants and including more detailed infringement allegations. Presently before the Court is Juni's Motion to Dismiss for lack of personal jurisdiction and improper venue, filed on April 7, 2011 (Doc. No. 250).

**III.   STATEMENT OF FACTS**

On January 7, 1997, the United States Patent and Trademark Office duly and legally issued the '491 Patent, entitled "Wireless Modem," after full and fair examination. The patented invention is a system and method for communicating with a subscriber unit over dual paths. (Doc. No. 64 at ¶¶ 29-51.) More specifically, the '491 Patent relates to a method or network providing a subscriber unit the ability to communicate directly with a base station, for example,

1

through a "path A" or via a modem (*e.g.*, a femtocell or picocell, or network extender) on "path B," improving coverage and network efficiency. EON is the assignee through an exclusive license of all right, title and interest in and to the '491 Patent and possesses all rights of recovery under the '491 Patent, including the exclusive right to recover for infringement. (Doc. No. 64 at ¶ 28.) The '491 Patent is valid and enforceable.

EON initiated this action for patent infringement against multiple defendants on October 22, 2010. (Doc. No. 1.) Juni markets, among other things, femtocells and picocells (*e.g.*, Juni FemtoMax/Picocell Solutions including the JFW and JFU series femtocell products and JS series femtocell servers and Juni UMTS Femtocell Gateways that manage and control multiple femtocells) and similar products "specifically for use in the Verizon Wireless network" (*e.g.*, Juni CiiS JR series products that "went through two years of extensive development and optimization specifically for the Verizon Wireless Network").[1]

Juni operates a website, www.juniamerica.com, and through its website, offers for sale the accused products and related services. Juni's website is accessible to residents of this district, and the website presents no restrictions on ordering Juni products from, and for delivery into, this district. For example, a customer visiting Juni's website may order a JR series product for his or her home that is "optimized for the Verizon wireless network and includes professional installation at your home or small office" from http://www.juniamerica.com/USA/CiiS/products_ciis_jr10.asp (see full webpages at Exh. C to Connor Decl., providing pricing and ordering information for Juni's JR series products):

---

[1] *See* http://www.juniamerica.com/products/products_wimax_femto600.asp (Exh. A to Connor Decl. ISO EON's Response to Juni's Motion to Dismiss (hereinafter "Connor Decl.") (describing femtocell/picocell products as "designed, developed and manufactured solely by Juni); http://www.juniamerica.com/USA/CiiS/products_ciis.asp (Exh. B to Connor Decl.) (describing Juni's product specifically designed for use on the Verizon network).

## JR-10 Home Solution

**Improve Indoor cell service at your home!**

The JR-10 Home Solution is optimized for the Verizon wireless network and includes professional installation at your home or small office.
This system provides reliable cellular coverage for areas up to 3,000 square feet.


JR-10 Indoor Coverage Unit


JR-10 Outdoor Antenna Unit

- **Receive and place business calls from home**

The JR-10 provides you the capability to work from home, using your cell phone as a virtual office phone.

**Price: $1,295**
(Includes installation. Excludes Tax)
* One Year Warranty



Copyright © Juni® 2009 Juni    All rights reserved.

(Exh. C to Connor Decl.)

3

Juni's website provides pricing information for its Cellular Indoor Improvement System products (CiiS products) that are designed and optimized for the Verizon Wireless Network:

### The CiiS is available in three models


JR-10 Home Solution

The JR-10 Home Solution provides up to **3,000** square feet of coverage.

JR-10 Price: $1,295
(Includes Installation. Excludes Tax)
* One Year Warranty


JR-20 Office Solution

The JR-20 Office Solution provides up to **25,000** square feet of coverage.

JR-20 Price: $3,995
(Includes Installation. Excludes Tax)
* One Year Warranty


JR-20Plus Office Solution

The JR-20Plus Office Solution provides up to **50,000** square feet of coverage.

JR-20Plus Price: $4,995
(Includes Installation. Excludes Tax)
* One Year Warranty

http://www.juniamerica.com/USA/CiiS/products_ciis.asp (Exh. B to Connor Decl.). In addition to providing pricing and ordering interactivity (*see, e.g.*, Exh. D to Connor Decl., providing customer order inquiry for specific Juni products, soliciting user's name, address, and comments), Juni's website provides a "Customer Sign In" screen (Exh. E1 to Connor Decl.) after which the user selects whether installation of the Juni product(s) is for a home or business (Exh. E2 to Connor Decl.). Then the user is presented a "Spectrum Use Agreement with Verizon" that the user may electronically execute in order to authorize Juni or Verizon to install Juni components at the user's location (Exh. E3 – E4 to Connor Decl. (Spectrum Use Agreement).

After executing the agreement, a user is prompted for additional personal information to complete the transaction (Exh. E5).

## IV. CONTROLLING LAW AND STANDARDS

Federal Circuit law governs the issue of personal jurisdiction in patent cases because the inquiry is "intimately related to patent law." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). Where, as here, there has been no jurisdictional discovery, a plaintiff need only make a *prima facie* showing that the defendants are subject to personal jurisdiction." *Id.* Accordingly, "the pleadings and affidavits are to be construed in the light most favorable to the plaintiff." *Id.* (internal quotations omitted).

In order for a court to exercise personal jurisdiction over an out-of-state defendant, the forum state's long-arm statute must permit jurisdiction without violating federal due process. *Nuance Comm'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010) (citation omitted). However, because the Texas long-arm statute is co-extensive with federal due process, "the analysis of Texas's long-arm statute collapses into the federal due-process inquiry." *Marshall Packaging Co. v. Nestle Waters North Am.*, No. 6:05CV295, 2006 WL 871015, at *1 (E.D. Tex. Mar. 24, 2006). Federal due process "requires an out-of-state defendant to have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts can be established by different methods, including either specific or general jurisdiction or, alternatively, the "stream of commerce" theory articulated by the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Specific jurisdiction exists where, as here, "the litigation arises out of the defendants' minimum contacts with the forum," whereas general jurisdiction "does not arise from or relate to the defendant's

5

contacts with the forum, but the defendant maintains continuous and systematic contacts with the forum state to confer jurisdiction." *Marshall Packaging*, 2006 WL 871015, at *2. When evaluating whether specific jurisdiction exists, the Federal Circuit applies a three prong test: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns*, 626 F.3d at 1231.

Although the Federal Circuit has not yet adopted a standard for minimum contacts in situations where the contact involved is via website, other circuits, including the Fifth Circuit, have adopted the sliding-scale test articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 2d 1119 (W.D. Pa. 1997). *See Advanceme, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (citing *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)). Under the sliding-scale test, a passive website, or one which "only allows the owner to post information to the site," does not satisfy the minimum contacts standard. *Id*. However, a website whose "owners engage in repeated online contacts with forum residents through the site will satisfy the minimum contacts requirement." *Id*. In the middle of the scale are websites that have "some interactive elements and allow for bilateral information exchange." *Id*. When websites fall into the middle ground, courts determine whether minimum contacts exist by "the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Powerhouse Prods., Inc. v. Widgery*, 564 F. Supp. 2d 672 (E.D. Tex 2008) (quoting *Zippo*, 952 F. Supp.2d at 1124) (citations omitted). The *Zippo* test is appropriate for evaluating the existence of either specific or general personal jurisdiction. *Id*. at 679.

In addition, the stream of commerce theory is an alternative means of evaluating a defendant's minimum contacts with the forum state. Under this theory, a defendant can

6

"purposefully avail itself of a forum by delivering its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Nuance*, 626 F.3d at 1233 (citing *World-Wide Volkswagen*, 444 U.S. at 298) (internal quotations omitted). This theory "is a third, independent basis for personal jurisdiction" and "[t]he Federal Circuit has made clear that 'the stream of commerce theory has achieved fairly wide acceptance in the federal courts.'" *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 655 (E.D. Tex. 2007) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994)). Applying the stream of commerce theory in a patent infringement case, the Federal Circuit explained that "[i]f the sale of a product . . . is not simply an isolated occurrence, but arises from the efforts of the defendants to serve, directly or indirectly, the market for its product, it is not unreasonable to subject it to suit." *Beverly Hills Fan*, 21 F.3d at 1566 (internal quotations omitted).

Moreover, as this Court explained, the stream of commerce theory is more analytically helpful with factual scenarios involving the distribution of accused products into the forum state. *See Marshall Packaging*, 2006 WL 871015, at *2. Indeed, "the distinction between specific jurisdiction and general jurisdiction is of little value in 'stream-of-commerce' cases because the scenario is one where 'the defendant's contacts are the result of establishing a distribution network in the forum State for the sale of defendant's products.'" *QR Spex.*, 507 F. Supp. 2d at 655 (quoting *Beverly Hills Fan*, 21 F.3d at 1566).

Lastly, with regard to venue in patent cases, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The term "resides" is further defined by 28 U.S.C. § 1391(c) such that "a defendant that is a corporation shall be deemed to

7

reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." And where a state, like Texas, has multiple judicial districts, a corporation is deemed to reside within a particular district if "its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state." *Id.*

## V. ARGUMENT

Juni directed the accused products into the stream of commerce with actual or constructive knowledge that they would ultimately be sold to consumers in Texas. Such contacts with the forum state provide a strong basis for this Court to exercise jurisdiction. Furthermore, the interests of EON, a Texas corporation, in litigating its claims in this forum, as well as the State of Texas's interests in enforcing patent laws for the protection of its citizens and scientific development, clearly outweigh whatever burden Juni would bear in litigating this matter here. Because jurisdiction is proper, it follows that venue is also proper.

Alternatively, Juni's sales and distribution agreements with Verizon Wireless at a minimum provide the necessary showing to entitle EON to jurisdictional discovery so that it may seek additional evidence of sales of the accused products in Texas.

### A. Juni is Subject to Personal Jurisdiction.

Because Juni has the requisite minimum contacts with Texas based both on Juni's website and under the stream of commerce theory and because there is no basis to find that jurisdiction over Juni would otherwise "offend traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, jurisdiction is proper.

#### 1. Juni Has Minimum Contacts with Texas under the "Stream of Commerce" Theory.

Because Juni purposefully delivers its products, including products accused in this case, into the stream of commerce through its own efforts and collaboration with nationwide carrier

8

Verizon, it is reasonable to assume that Juni "knew, or reasonably could have foreseen, that [these products] would be sold in the State of Texas." *GSK Techs. v. Schneider Elec., S.A.*, No. 6:06CV361, 2007 WL 788343, at *2 (E.D. Tex. Mar. 14, 2007). Therefore, Juni's distribution network provides the necessary minimum contacts with Texas to confer personal jurisdiction.

In *GSK Technologies,* this Court exercised jurisdiction under the stream of commerce theory where it was "undisputed that distribution channels have been intentionally set up to sell the [accused product] in home improvement stores and other retailers in the United States." *Id.* Resolving all controverted allegations in favor of the plaintiff, the Court held that because "the State of Texas has the second largest population of any state and three of the ten most populated cities . . . it is only reasonable to assume that [defendants] knew, or reasonably could have foreseen, that the [accused products] would be sold in the State of Texas." *Id.*

Similarly, in *Aten International*, "[plaintiff's] evidence that [the defendant] continuously sells its products to a U.S. nationwide retailer is a strong indication that it intends to direct its products nationwide" and "with the knowledge and an intention that they be sold in Texas." *Aten Int'l v. Emine Tech. Co.*, 261 F.R.D. 112, 120 (E.D. Tex. 2009). Here, although Juni denies any sales, directly or indirectly, in Texas, (Doc. No. 250 at 4, 6), Juni's website devotes an entire section to its Verizon Wireless products:



http://juniamerica.com/ourcompany.asp (Exh. F to Connor Decl.). Verizon, a defendant in a related case, No. 379, does not contest jurisdiction. It is reasonable to infer that Juni knew its products would be sold in Texas or used in Verizon's networks in Texas.

9

### 2. Juni Also Has Minimum Contacts with Texas Through its Website under the *Zippo* Sliding-scale Test,

At a minimum, Juni's website falls in the middle of the *Zippo* sliding-scale spectrum. *See Advanceme, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (noting the Fifth Circuit's adoption of the *Zippo* sliding-scale analysis and evaluation of the level of a website's interactivity). Considering the high level of interactivity and the commercial nature of Juni's website, finding Juni has minimum contacts with Texas is appropriate. Under circumstances similar to the facts here, this Court has found minimum contacts exist. In *Powerhouse Productions Inc. v. Widgery*, this Court found the *Zippo* middle ground was satisfied where the defendant's website allowed for the bulk purchase of products, prompted users to provide an email address to sign up for the defendant's newsletter, and "solicited user input so that marketing materials containing the infringing marks could be mailed to residents of Texas." 564 F.Supp. 2d at 679. Although there was no evidence that the defendant had contracted with Texas residents through its website, the court found that the defendant had minimum contacts and that specific personal jurisdiction existed. *Id.*

Similar to the defendant in *Powerhouse*, Juni solicits sales of its products through its website. (*See, e.g.*, Exh. B to Connor Decl.) Juni's website provides forms for order inquiries where Texas residents can provide their contact information and inquire about specific models and quantities of Juni's products. (*See* Exh. D to Connor Decl.) Moreover, contrary to the statements contained in John Kim's Declaration (Doc. No. 250-1 at 2), Juni's website provides pricing information. (*See* Exh. B. to Connor Decl.)

For its Verizon-related products, in addition to pricing and ordering information, Juni's website provides a series of interactive screens (Exhs. E1 – E6 to Connor Decl.) through which a

customer accesses a "Spectrum User Agreement," This agreement appears to be promulgated by Verizon and tailored for a home customer (Exh. E4, "Spectrum Use Agreement – Consumer") or business customer (Exh. E5, "Spectrum Use Agreement – Business to Business"). After electronically executing the Agreement through Juni's website, the customer inputs additional personal information, including their name, address, social security number or date of birth, along with a Juni order number and is apparently able to transact through Juni's website for installation services or additional products. (*See* Exh. E5 to Connor Decl.) Because of the commercial nature and the high level of interactivity of Juni's website, the minimum contacts standard is satisfied and this Court has personal jurisdiction. *See Advanceme, Inc.*, 450 F. Supp. 2d at 673 (finding minimum contacts where "[p]otential customers can [] fill out an online form and apply for [defendant's] services through its website").

### 3. <u>Juni Cannot Demonstrate that Jurisdiction Would be Unreasonable</u>.

Juni can establish no basis to defeat both EON's and the State of Texas's strong interests in maintaining this litigation in Texas. Because EON has established a *prima facie* case for this Court's exercise of personal jurisdiction, Juni must now show that this would nevertheless "offend traditional notions of fair play and substantial justice." *Aten Int'l*, 261 F.R.D. at 120.

To make such a showing, the Federal Circuit emphasized that the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Nuance*, 626 F.3d at 1231 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Indeed, "defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" *Id.* (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995)).

Specifically, the Federal Circuit has laid out a five-part balancing test for making this determination wherein the court weighs "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversies; and (5) the interest of the states in furthering their social policies." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996).

An analysis of these factors illustrates that this is not one of those rare situations where the burdens on Juni are sufficient to defeat otherwise constitutional jurisdiction. *See Nuance*, 626 F.3d at 1231. As this court has explained in other similar cases, "Texas has a significant interest in preventing patent infringement within its borders and in protecting the patent rights of its citizens. Texas also has an interest in furthering commerce and scientific development, especially within its technology sector, which is promoted by patent laws." *Marshall Packaging*, 2006 WL 871015, at *5; *see also Aten*, 261 F.RD. at 120 ("The State of Texas's interests are not so attenuated that they are clearly outweighed by any burden [the defendant] would suffer by having to defend this case in Texas, rather than some other state."); *GSK Techs.*, 2007 WL 788353, at *4 (rejecting the argument that exercising personal jurisdiction would be unreasonable where both the plaintiff and the State of Texas had substantial interests in maintaining the litigation in Texas and the defendants "do not provide evidence that they would be substantially burdened by having to defend this case in Texas").

Furthermore, like the plaintiff in *Marshall Packaging*, EON is a Texas corporation and therefore has an interest in litigating its infringement claims in Texas. *Marshall Packaging*, 2006 WL 871015, at *5. Accordingly, this Court possesses jurisdiction over Juni.

### B.     Because Juni is Subject to Personal Jurisdiction, Venue is Proper.

Because Juni is subject to personal jurisdiction in the Eastern District of Texas, venue is also proper. Under 28 U.S.C. § 1400(b), a defendant in a patent infringement action is subject to venue anywhere the defendant resides. And a defendant corporation "is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

As detailed above, EON has established a prima facie case for this Court's exercise of personal jurisdiction over Juni. Accordingly, venue is proper in this district and Juni's motion to dismiss on this ground should be denied. *See Aten*, 261 F.R.D. at 121 (denying motion to dismiss for improper venue where the defendants were subject to personal jurisdiction under the stream of commerce theory); *see also T-Netix v. Pinnacle Pub. Servs., LLC*, No. 2:09-CV-333-CE, 2010 WL 3859687, at *5 (E.D. Tex. Sept. 30, 2010) (holding venue was proper in the Eastern District of Texas because plaintiff established a prima facie case supporting specific jurisdiction over the defendant).

### C.     Alternatively, EON is Entitled to Jurisdictional Discovery.

In the event this Court is not inclined to find jurisdiction over Juni based upon the facts presently known and developed, an opportunity for jurisdictional discovery should be granted so that EON may seek evidence of specific sales of Juni's accused products in this district.

Because requests for discovery are not unique to patent law, regional circuit law applies. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021-22 (Fed. Cir. 2009). The Fifth Circuit has held that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citation omitted).

Here, EON intends to request records of Juni's sales and offers of sales of the accused products in the State of Texas or sales by third-party distributors, as well as any sales or distribution agreements with nationwide retailers, such as Verizon Wireless. While Juni's CEO Mr. Kim states in his declaration that Juni has made no sales "on behalf of itself or any other person or entity . . . to consumers in the state of Texas," he does not state that Juni has never sold its products into Texas and into this district through a distributor or other third-party acting on Juni's behalf. (*See* Kim Decl., Doc. 250-1, at ¶ 4). The evidence sought will provide specific examples of Juni's actions in purposefully delivering the accused products into the stream of commerce with actual or constructive knowledge that the products will ultimately be sold in Texas. Based on Juni's existing relationship with Verizon Wireless, it is likely that EON will uncover additional evidence of Juni's distribution of the accused products into the national stream of commerce, and ultimately, to Texas and this district.

## VI.   CONCLUSION

For the reasons stated herein, EON respectfully requests the Court deny Juni's Motion or, in the alternative, permit EON to conduct jurisdictional discovery and submit any supporting evidence discovered.

DATED:  April 25, 2011                    Respectfully Submitted,

*/s/ Cabrach Connor*
Daniel Scardino
Texas Bar No. 24033165
Jeffery Johnson
Texas Bar No. 24048572
Cabrach J. Connor
Texas State Bar No. 24036390

        Reed & Scardino L.L.P.
        301 Congress Avenue, Suite 1250
        Austin, TX 78701
        Telephone:  512-474-2449
        Fax:  512-474-2622
        dscardino@reedscardino.com
        jjohnson@reedscardino.com
        cconnor@reedscardino.com

        **ATTORNEYS FOR PLAINTIFF**
        **EON CORP. IP HOLDINGS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2011, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means, all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail today, April 25, 2011.

        /s/ *Cabrach Connor*
        Cabrach Connor